IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CARLOS WILSON #533953,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:21-cv-00026 |
| v. | ) |
| | ) JUDGE TRAUGER |
| **TENNESSEE DEPARTMENT** | ) |
| **OF CORRECTION, et al.,** | ) |
| | ) |
| Defendants | ) |

### MEMORANDUM AND ORDER

Carlos Wilson, a state inmate proceeding pro se, has filed this civil rights action under 42 U.S.C. § 1983 along with an application to proceed in forma pauperis (IFP). (Doc. Nos. 1, 2.) The matter is before the court on the plaintiff's IFP application and his motion to appoint counsel, and it is further subject to initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I.     APPLICATION TO PROCEED AS A PAUPER

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from the plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the application (Doc. No. 2) is **GRANTED**.

However, under Section 1915(b), the plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and

to pay the remainder in installments. Accordingly, the plaintiff is hereby **ASSESSED** a $350 filing fee, to be paid as follows:

(1) The custodian of the plaintiff's inmate trust-fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to the plaintiff's account; or (b) the average monthly balance in the plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust-fund officer must withdraw from the plaintiff's account and pay to the Clerk monthly payments equal to 20% of all deposits credited to the plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $350 filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this order, he must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this order and submit it to the Clerk along with the payment. All submissions to the court must clearly identify the plaintiff's name and the case number as indicated on the first page of this order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this order to the warden of facility where the plaintiff is currently housed to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian of his inmate trust-fund account **MUST** ensure that a copy of this order follows the plaintiff to his new place of

2

Case 3:21-cv-00026   Document 4   Filed 01/26/21   Page 2 of 6 PageID #: 62

confinement for continued compliance with this order.

## I. INITIAL REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2), the court is required to conduct an initial review of any complaint filed in forma pauperis and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. Jan. 31, 2011).

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The plaintiff alleges that during a previous stay in the Bledsoe County Correctional

3

Case 3:21-cv-00026   Document 4   Filed 01/26/21   Page 3 of 6 PageID #: 63

Complex (BCCX) in Pikeville, Tennessee, he was harassed about signing a consent to collect his DNA, which he always refused, and was consequently charged with disciplinary infractions and held in punitive segregation beginning on March 10, 2020. (Doc. No. 1 at 3–4.) He alleges that he was held in segregation for over six months without due process and names numerous officials he says are responsible for his segregation and for failing to take corrective action. (*Id.* at 5–10.) He seeks $15 Million in damages. (*Id.* at 13.)

The plaintiff complains about a lack of due process in connection with his segregation, but "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *McKune v. Lile*, 536 U.S. 24, 37 (2002) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). The plaintiff alleges that he was segregated at BCCX from March 2020 until he was transferred over six months later, but courts have found much longer periods of segregation were not sufficiently atypical or significant to trigger due process protections. *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen months); *Merchant v. Hawk–Sawyer*, 37 F. App'x 143 (6th Cir. 2002) (twenty-one months); *Bradley v. Evans*, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months). Accordingly, the plaintiff's segregation itself did not violate due process.

Moreover, Tennessee law requires the collection of DNA samples from everyone convicted of any of a number of felonies or arrested for any violent felony. Tenn. Code Ann. § 40-35-321. The court takes judicial notice that the plaintiff has been convicted of aggravated sexual battery in violation of Tenn. Code Ann. § 39-13-504, which is one of the offenses triggering the requirement to provide a DNA sample. *See State v. Wilson*, No. W201401388CCAR3CD, 2015 WL 5772420 (Tenn. Crim. App. Sept. 30, 2015); Complaint at 12, *Wilson v. Shelby County*, No. 3:20-cv-01093

4

(M.D. Tenn. Dec. 21, 2020). The Tennessee Department of Correction has a policy governing the collection of such samples, which "provides, in relevant part, that the institutional health administrator is responsible for ensuring that biological specimens are collected from inmates; that those who refuse to give the specimen will be issued a disciplinary write-up; and that such inmates will forfeit behavior credits until they agree to furnish the specimen." *Thomas v. Hayes*, No. 2:04-CV-284, 2006 WL 2708267, at *2 (E.D. Tenn. Sept. 19, 2006). Tennessee's statutory DNA sample requirement and the TDOC policy implementing it have been upheld against constitutional challenge. *Id.*; *see also Wilson v. Collins*, 517 F.3d 421 (6th Cir. 2008) (upholding DNA collection from convicted felons); *United States v. Conley*, 453 F.3d 674 (6th Cir. 2006) (same). Accordingly, the plaintiff does not state any viable claim for violation of his constitutional rights in connection with the request for a DNA sample that was the basis for the disciplinary action against him.

Finally, the court observes that the plaintiff attached a "supplement" to his complaint, in which he names different defendants and alleges that they are conspiring to deprive him of his rights and liberty. (Doc. No. 1-1.) This supplement is entirely conclusory and does not allege any facts that could form the basis of a claim for relief. White v. Wayne Cty. Circuit Court Clerks, 146 F. App'x 792, 794 (6th Cir. 2005) ("Conclusory allegations, unsupported by any material factual allegations, are not sufficient to state a claim under § 1983.").

## II. CONCLUSION

Accordingly, this action is **DISMISSED** for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Any appeal of this order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

5

This is the final order denying all relief in this matter. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge